In re Estate of GERHARD JOHAN STEVENS, Deceased.

**Wills:** ELECTION BY WIDOW: MENTAL CAPACITY. The degree of in-
1  competency which will authorize the court to make an election for a widow, between the provisions of her husband's will for her benefit and her distributive share in his estate, is the same as that which obtains generally with reference to the performance of any act by one whose mental competency is questioned.

**Same:** ELECTION BY COURT: DISCRETION. In making an election for
2  an incompetent widow between the provision of her husband's will for her benefit and her distributive share the court has a wide

discretion; and in making the election the court may consider and be governed by the fact that a distributive share of the estate would be more valuable to her heirs, even though the provisions of the will were ample for her support during the remainder of her life.

Same: ELECTION BY WIDOW. Under the Code of 1873 a widow's share in her husband's estate was unaffected by the provisions of his will for her benefit, unless she consented thereto; and in the absence of facts creating an estoppel she could not be held to have consented except by a written or oral consent entered upon the records of the court.

Same: DISTRIBUTIVE SHARE: ELECTION. Where the provisions of a will for the benefit of the widow are made with the express condition that they shall be accepted in lieu of dower, or the same are inconsistent with her distributive share, or with other provisions of the will for her benefit or that of other legatees, an election by the widow is required. In the instant case the testator gave the widow a life use of the personal property and the real estate. He then gave a grandson a specified tract of land, not in remainder but presently, although there was a clause concerning its use by the grandson after the testator's death. Provision was also made for a division of this land, should he die unmarried, among testator's children, naming them. *Held*, that the will indicated an intention of the testator that the provision for the widow should be exclusive of her distributive share, and she was required to make her election.

*Appeal from Carroll District Court.*—HON. M. E. HUTCHIN-
SON, Judge.

MONDAY, DECEMBER 15, 1913.

CROSS-APPEALS from an order made by the District Court on an application for an election by an alleged insane widow as to whether she should take under a will of her deceased husband, and from the order of election directed to be made by said District Court.—*Affirmed.*

*Chas. C. Helmer,* for Mary Stevens, the widow, and for the guardian *ad litem.*

*Reynolds & Meyers,* for the applicant, John Pels, cross-appellant.

DEEMER, J.—Mary Stevens is the widow of Gerhard
Johan Stevens, who died testate on the 1st day of August,
1894, leaving his widow and three children, Henry, Herman,
and Mary Korwes, and one John Pels, a grandson, surviving.
Testator was, at the time of his death, seised of the E. ½ of
the S. E. ¼ and the E. ¾ of the S. W. ¼ of the S. E. ¼ of
section 16, containing one hundred and nine acres of land;
and the S. E. ¼ of section 28, containing one hundred and
sixty acres; and the N. ½ of the S. W. ¼ of section 27, con-
taining eighty acres—or, in all, three hundred and forty-nine
acres of land. He was also possessed of considerable personal
property, the amount being to us unknown and nowhere stated
in the record. The will of said Stevens was duly admitted to
probate on September 6, 1894, and Mary Stevens, his widow,
was appointed executrix. From the will, we extract the fol-
lowing provisions, material to the controversy now before us:

3. I give to my wife Mary Stevens, for the term of her
natural life, all my household and kitchen goods and furni-
ture and all of my other personal estate, goods and chattels,
including moneys, notes and credits, excepting however all
such property, which I give and devise herein otherwise.

4. I also give to my wife Mary Stevens, for the term of
her natural life, all of the following described lands, to wit:
East half of the southeast quarter and east three-fourths of
southwest Qr. of south east Qr. section 16 Twp. 83 R 35, con-
taining one hundred and nine acres, and southeast Qr. Sec 28,
Tp. 82, R. 35 containing one hundred and sixty acres, and north
half of southwest quarter Sec. 27, Tp. 82, R. 35, containing
eighty acres, also all other lands which I may own at the time
of my death. I also give to my wife all the rents, profits and
income from said lands, subject to the provisions made by me
as mentioned in this will.

5. I give to my grandson John Pels, to him and his heirs
forever, my land near Hillsdale, being E. ½ S. E. ¼ and east
¾ of S. W. ¼ S. E. ¼ 16-83-35, containing one hundred and
nine acres, together with all the hereditaments and appurte-
nances thereunto belonging or in anywise appertaining, and it
is my wish and desire, that after my death, the said John Pels
shall have exclusively the sole right to work said one hundred

and nine acres of land and break so much thereof as he can work and no part of these one hundred and nine acres shall be rented to any party whatever, during the minor age of my said grandson.

6. I give all my farming utensils to my grandson John Pels, also a span of horses if there be any; these horses may be sold after my decease, but a span of same value must be bought when the said John Pels is of age, one certain Quilt of white color with green and yellow brim shall come into possession of said John Pels.

7. I give and bequeath to my son Herman Stevens the sum of one thousand dollars; to my son Henry Stevens the sum of one thousand dollars and to my daughter Mary Korwes, the sum of one thousand dollars, which said several legacies or sums of money I direct and order to be paid to the said respective legatees within six months after the decease of my wife Mary Stevens.

8. I give and devise after the death of my said wife, all the rest residue and remainder of my moneys or notes to my son Herman Stevens, to my son Henry Stevens and to my daughter Mary Korwes, to be equally divided between them, share and share alike, provided it shall so much money be taken to pay the guardian Henry Stevens (or whosoever it may be) all the expenses for the education of John Pels, my grandson.

9. After each of my three children, viz., Herman Stevens, Henry Stevens and Mary Korwes has received two thousand dollars in full of all the legacies to them, under this will, the rest of the money (if there is any more on hand) has to be divided in equal shares to my sons Herman, Henry and to my daughter Mary and my grandson John Pels, and if any of them is deceased the children of the deceased shall be entitled to such share.

10. None of my lands, which I may own at the time of my death, shall be sold until after the death of my said wife Mary Stevens, and if sold, the proceeds of such sale shall be equally divided, share and share alike among my three children Herman, Henry and Mary and my grandson John Pels or the children of these four persons in case any one thereunder is dead.

15. I hereby appoint Henry Stevens, my son, of Eden township, Carroll county, Iowa, guardian of my grandson

John Pels and request my said son Henry to attend especially to the management of my farms and to aid my wife as executrix.

16. If the said John Pels should die unmarried, all of his share herein devised to him shall be equally divided among my children Herman Stevens, Henry Stevens and Mary Korwes or any of their surviving children.

18. All the fences and buildings on the farms shall be kept in good condition after my death, and expenses thereof shall be taken from the income of the lands.

19. My grandson John Pels was born January 22, 1879, and he was six months old when I took him, and it shall be the duty of the guardian to give said John Pels a good education and no expenses of money shall be spared for this purpose.

Since the death of testator, his widow Mary has collected the rents and profits of the real estate and has used and enjoyed all the personal property left by the deceased; but she has never filed a formal election of record to take under the will. This application was made by John Pels, the grandson, for an order requiring an election by Mary Stevens or her representative, under allegations that she was unsound of mind and incapable of making an election, and that it would be to her best interests to take under the will rather than her distributive share allowed by law. Among other things, it was alleged: ''That by the terms of said will your petitioner was willed specific real estate, and it is further provided that certain real estate might be sold after the death of Mary Stevens, surviving spouse of said decedent, and that the provisions of said will for the benefit of said surviving spouse, Mary Stevens, are inconsistent with the surviving spouse taking her distributive share of said real estate and personal property under the law.''

A guardian *ad litem* was appointed for the widow, and the widow and guardian filed a demurrer to the petition reciting the facts above stated upon the grounds: First, that the widow was not required to elect, but could take both under

the will and under the law; second, that by the taking of the rents, etc., as alleged, she had not elected; and, third, that by the terms of the will itself it is conclusively presumed that the testator intended that the widow should take both under the will and under the law. This demurrer was overruled, and the defendants then answered, denying the alleged mental unsoundness, and electing to stand on the demurrer as to the other allegations.

On these issues the case was tried to the court, resulting in the following order: ". . . And the court, having been fully advised in the premises, finds that said Mary Stevens is mentally incompetent to make an election for herself to take under the will of said decedent or to take her distributive share under the law, and that it is for the best interests of said Mary Stevens that she take her dower or distributive share in the estate of her said deceased husband, to which the said Mary Stevens excepts."

The widow, the guardian *ad litem*, and Pels, all appeal. The widow and the guardian *ad litem* will be called the appellants.

I.    We may first dispose of the questions which, while important, do not seem to be doubtful. It is argued that there is not sufficient testimony of the widow's incompetency to

1. WILLS: election by widow: mental capacity.

justify a finding that she did not have sufficient capacity to make an election for herself. It is now provided by statute that: "The survivor's share cannot be affected by any will of the spouse, unless consent thereto is given within six months after a copy thereof has been served upon the survivors. . . . But when such surviving spouse is mentally incapable of making such election, the court on petition being filed alleging such disability, may set the matter down for hearing at such time and place as it may deem best, and direct what notice thereof shall be given; and at such hearing the court may enter an order electing for such spouse, which shall be the election under this section, of the person under such disability."

Section 3376, Code Supp. The degree of mental incompetency which will justify an election by or under the direction of the court is the same as that which obtains generally with reference to the performance of any act, by one whose sanity is questioned; and, tested by this rule, we think there was sufficient testimony to show the widow's incompetency, and that, if an election was required, the trial court was justified in making one.

II.  Assuming that an election was required and that the court was justified in entering one, we see no reason for disturbing the election as made. True, the widow was ninety-two years old at the time of trial, and it is conceded that the annual income from the entire real estate was about $1,200, a sufficient amount to properly support the widow during the remaining years of her expectancy. But it is also shown that one-third of the entire property might be sold for a sum which, if used for her support, would give her more than the $1,200 per year, and, if not sold, would leave her heirs an estate of much value. A wise and wide discretion is vested in the trial court in such matters, and we do not think there was any abuse of discretion here.

2. SAME: election by court: discretion.

Assuming that there was a right or necessity for compelling an election, the usual rule in such cases should be to give to the widow that which would be of the most benefit to her, and we are not sure that the value of her estate after death is not a proper matter for consideration. When the widow herself elects, she generally selects that which would be of most value, and as a rule an estate in fee to a considerable amount of land is of more value than a life estate in all of it. It is quite natural in such a case for a widow, if she has heirs, to take them into account when she makes a voluntary election, and, this being true, the court may do the same thing without being charged with an abuse of discretion. No hard and fast rule should be announced for these cases. At best, it is largely a matter of discretion, which will not, as a rule, be interfered with on appeal. This disposes of the cross-appeal of Pels.

III. The only other question in the case, and, as we think, the only debatable one, is whether or not there is any such inconsistency between the provisions of the will giving

3. SAME: election the widow a life estate in all the property, and
by widow.     her right to also take her distributive share,

that she is required to make an election; in other words, whether she may not, under our previous decisions, be entitled to both. The testator died before the adoption of the Code of 1897, and the rights of the widow must be determined under the law as it existed prior to the adoption of the Code of 1897. Sections 2440 and 2452 of the Code of 1873 read as follows:

One-third in value of all the legal or equitable estates in real property, possessed by the husband at any time during the marriage, which have not been sold on execution or any other judicial sale, and to which the wife has made no relinquishment of her right, shall be set apart as her property in fee simple, if she survive him. (Code of 1873, section 2440.)

The widow's share cannot be affected by any will of her husband, unless she consents thereto within six months after notice to her of the provisions of the will by the other parties interested in the estate, which consent shall be entered on the proper records of the circuit court. (Code of 1873, section 2452.)

What these rights are or were under these sections is a matter of much doubt under our previous decisions. The corresponding sections of the Revision of 1860 read as follows:

The widow's dower cannot be affected by any will of her husband if she objects thereto and relinquishes all rights conferred upon her by the will.

One-third in value of all the real estate in which the husband at any time during the marriage had a legal or equitable interest, and to which the wife has made no relinquishment of her rights, shall under the direction of the court, be set apart by the executor, as her property in dower upon the death of the husband, if she survive him. Said estate in

dower to be and remain the same as at .common law; . . . all the provisions hereinbefore made in relation to the widow of a deceased husband, shall be applicable to the husband of a deceased wife. The estate by courtesy is hereby abolished.

The Ninth General Assembly passed an act known as chapter 151, which changed the Code of 1860, as follows:

One-third in value of all the real estate in which the husband at any time during the marriage had a legal or equitable interest, which has not been sold on execution or other judicial sale, to which the wife has made no relinquishment of her right, shall, under the direction of the court, be set apart by the executor, administrator or heir, as her property in fee simple, on the death of the husband, if she survive him. . . .

All the provisions hereinbefore made in relation to the widow of a deceased husband, shall be applicable to the husband of a deceased wife. Each is entitled to the same right of dower in the estate of the other, and the like interest shall in the same manner descend to their respective heirs. The estate by courtesy is hereby abolished.

No change was made in section 2435 of the Revision, until the adoption of the Code of 1873, which enacted section 2452 heretofore quoted as a substitute. Section 1407 of the Code of 1851 read exactly as section 2435 of the Revision; and sections 1394 and 1421 of the Code of 1851 read as follows:

One-third in value of all the real estate in which the husband at any time during the marriage had a legal or equitable interest, which has not been sold on execution or other judicial sale and to which the wife had made no relinquishment of her rights, shall under the direction of the court be set apart by the executor as her property in fee simple upon the death of the husband if she survive him. . . .

All the provisions hereinbefore made in relation to the widow of a deceased husband shall be applicable to the husband of a deceased wife. Each is entitled to the same rights of dower in the estate of the other, and like interests shall in

the same manner descend to their respective heirs. The estate by courtesy is hereby abolished.

The change to a life estate in lieu of a fee simple seems to have been made by the 4th General Assembly, chapter 61, which went into effect in July, 1853. The acts of the 9th General Assembly were effective April 18, 1862.

From this view of the sections, it seems that the only change made by section 2452 of the Code of 1873 was to the effect that prior to that time the widow's share could not be affected by any will of her husband, "if she objects thereto, etc." Whereas, under the Code of 1873, it could not be affected, unless she affirmatively consented in a given manner. The Code of 1897, it may be suggested, parenthetically, does not materially change section 2452 of the Code of 1873, in so far as it relates to the question now before us. Compare Code of 1873, section 2452, with section 3376 of the Code of 1897.

It may safely be assumed, then, that since the year 1873 the widow's share could not be affected by any will of her husband, unless she consented thereto; and that this consent had to be in formal method and entered of record. Under the cases construing these sections, the rule undoubtedly was that, in the absence of a clear case of estoppel, the widow could not consent to take under the will without a written or an oral consent, which, in either case, had to be entered of record. The following are some of the cases so holding: *Baldozier v. Haynes,* 57 Iowa, 683; *Whited v. Pearson,* 87 Iowa, 513; *Newberry v. Newberry,* 114 Iowa, 704; *Warner v. Hamill,* 134 *Iowa,* 279; *Houston v. Lane,* 62 Iowa, 291; *Bailey v. Hughes,* 115 Iowa, 304; *Byerly v. Sherman,* 126 Iowa, 447. We are relieved by concessions of counsel from reviewing this question further; for the reason that no claim is made by either side that the widow ever made an election for herself and no estoppel is pleaded. The difficulty arises from other aspects of the case.

If the provisions made for the widow in the will are not

inconsistent with her distributive share, then her share is

not affected thereby, and there is no occasion

4. Same: distrib-
utive share:
election.

for any election. In such cases, she may
have both. But if there be an inconsistency,
then, as she cannot have both, there must or may be an elec-
tion, and none may be made save as pointed out by statute.

Again, it was provided by section 2322 of the Code of
1873: ''Any person of full age and sound mind may dispose,
by will, of all his property except what is sufficient to pay
his debts, or what is allowed as a homestead, or otherwise
given by law as privileged to his wife and family.'' This
section has been materially changed by the Code of 1897. See
section 3270. Under the Code of 1873 and prior to that time,
it was held that a testator might, in his will, expressly pro-
vide that a provision therein for his wife was to be in lieu
of dower; and that although there was no such express dec-
laration, if there was an inconsistency between the provisions
of the will and right to take the distributive share, there was
an implication that such was his intent and that in either
event the widow's share was affected by the will, and section
2452 of the Code of 1873 became operative, and an election
was necessary. There is no express provision, in the will now
before us, that the devise to the widow was to be in lieu of
dower, and, if there was any necessity for an election, it
must be found that there was an implied provision of that
kind, or, what is the same thing, that there is an inconsistency
between the provisions made for the widow in the will and
her right to distributive share; in other words, that her dis-
tributive share was affected by the provisions of the will.
The cases supporting these propositions are numerous, and
but few need be cited. *Potter v. Worley,* 57 Iowa, 66; *Cor-
riell v. Ham,* 2 Iowa, 552; *Daugherty v. Daugherty,* 69 Iowa,
677; *Sutherland v. Sutherland,* 102 Iowa, 535; *Clark v. Grif-
fith,* 4 Iowa, 405; *Herr v. Herr,* 90 Iowa, 538; *Metteer v.
Wiley,* 34 Iowa, 214; *Bare v. Bare,* 91 Iowa, 143; *Sully v.
Nebergall,* 30 Iowa, 339; *McGuire v. Brown,* 41 Iowa, 650;

*Richards v. Richards,* 90 Iowa, 606; *Watrous v. Winn,* 37 Iowa, 72; *In re Blaney,* 73 Iowa, 113; *Rittgers v. Rittgers,* 56 Iowa, 218; *Bentley v. Bentley,* 112 Iowa, 625; *Warner v. Hamill,* 134 Iowa, 279; *Archer v. Barnes,* 149 Iowa, 658; *Parker v. Parker,* 155 Iowa, 65; *In re Proctor's Estate,* 103 Iowa, 232; *Percifield v. Aumick,* 116 Iowa, 383; and many more cases cited in these.

In most, if not all, of these cases, it was held that a devise to the widow of a life estate in a part or all of testator's real estate was not inconsistent with her right to take her distributive share in all; but in most, if not all, of them there was no specific devise of a present interest in any part or all of the real estate owned by the testator. The remainder passed either under a residuary clause or upon a general devise to all of a class. It may be said, then, that as a rule under the provisions of the Code of 1873, and even under prior statutes, the devise of a life estate in property of the testator to his widow is not necessarily inconsistent with her right to take her distributive share, and that no election on her part is necessary. But if she be given a specific devise in fee of real estate belonging to the deceased, this would be inconsistent with her right to take her distributive share in all. *Snyder v. Miller,* 67 Iowa, 261. Prior to the adoption of a rule to which we shall presently refer, it seems to have been held that the inconsistency to which we have referred, and which seemed to be the controlling factor, was inconsistency between the provision made for her in the will and her right to take her distributive share, and if there was no such inconsistency the distributive share was not affected by the will and she might have both.

At an early day, however, another test was applied, although perhaps not consistently followed. We here quote, as follows, from *Snyder v. Miller,* 67 Iowa, 264, 265, 266:

. . . We are required to determine whether the claim made by the widow, that she is entitled to the devises con-

tained in the second paragraph, and to one-third in fee of all
the residue of the real estate, is so repugnant to and incon-
sistent with the will that to allow both claims to stand would
defeat the provisions of the will. As it is stated in *Corriell
v. Ham,* 2 Iowa, 552, 'the claim of dower must defeat or inter-
rupt or disappoint some provision of the will,' and, as it is
stated in *Clark v. Griffith,* 4 Iowa, 405: 'Unless a devise to
the wife, to be ascertained either from express words or by
necessary implication, is intended to be in lieu of dower, she
will not be compelled to elect which she will take, but will
be entitled to both. If it is left in doubt whether it was the
testator's intention that she should take the devise in addi-
tion to the dower, she will not be put to her election.' And
see, also, *Church v. Bull,* 2 Denio (N. Y.) 430 (43 Am. Dec.
754) ; *Adsit v. Adsit,* 2 Johns. Ch. (N. Y.) 448 (17 Am. Dec.
539) ; and *Smith v. Kniskern,* 4 Johns. Ch. (N. Y.) 9. There
have been quite a number of cases in this court, in addition
to those above cited, where the court has been called upon
to determine whether, under a will, a wife is entitled to take
both dower and the provisions made for her in the will. See
*Cain v. Cain,* 23 Iowa, 31; *Metteer v. Wiley,* 34 Iowa, 214;
*Watrous v. Winn,* 37 Iowa, 72; *Van Guilder v. Justice,* 56
Iowa, 669. In these, and possibly other cases which might be
cited, this court has adhered to the rule above announced. We
have not given the facts in any of the cases cited, because it
is apparent that each case must be determined upon the facts
as they appear in the record; that is, as no two of the wills
construed in the cases are in the same language, and as no
one of them is in the language of the will in the case at bar,
we are required to apply the rule to this case, and can receive
but little aid from any adjudged case.

We are to inquire what was the plain and obvious intent
of the testator as to the share his wife should have in the estate.
In other words, if the widow is allowed to take under the will,
and in addition be endowed under the law, does such taking
plainly defeat other provisions of the will? In our opinion,
if she should be allowed to take one-third of the real estate not
devised to her by the will, the shares of the persons named
in the sixth paragraph would be one-third less than the testator
plainly intended they should be. The manifest meaning of this
will, as we understand it, is that the testator gives certain prop-
erty to his wife by description, then he gives certain specific

legacies, then he disposes of all the residue of his property without description, and then in the last paragraph he provides for the sale of all the remainder of his real estate for the purpose of carrying out the devises as to the persons named in the sixth paragraph. . . . We cannot adopt the claim of appellee's counsel that, in the direction to sell the real estate in the seventh paragraph, and in the disposition of the residue of his property in the sixth paragraph, the testator did not mean to dispose of all the real estate—all of the property— but only such interest in it as he owned, which was two-thirds; the one-third being the property of his wife. This construction appears to us to be strained and unnatural. He plainly directs the sale of the real estate—the land—and not any interest in the land. If he had intended to direct the sale of an undivided two-thirds of the land, he surely would have so stated. Our conclusion is that, taking this will by its four corners, and giving it a plain, natural, and common sense construction, it is manifest that the testator intended the provision therein made for the plaintiff to be in lieu of dower or a distributive share, and to hold otherwise would, we think, defeat the intention of the testator, and in effect nullify his will.

This same rule was followed in *Mohn v. Mohn,* 148 Iowa, 288; *Parker v. Parker,* 129 Iowa, 600; *In re Will of Foster,* 76 Iowa, 364; *Severson v. Severson,* 68 Iowa, 656; *Van Guilder v. Justice,* 56 Iowa, 669; *Cain v. Cain,* 23 Iowa, 31. All these cases, save those referred to in the quotation from 67 Iowa, were decided after the revision of 1860 and after the session of the Ninth General Assembly, to which reference has been made. The only case subsequent to those last cited, which is relied upon as adhering to the old rule, is *Parker v. Parker,* 155 Iowa, 65. In that case, however, there was no claim made to the property covered by a specific devise, and the only lands involved were those given under a residuary clause, as follows: ''Second, I will and give to my four grandsons (naming them) all the residue of my estate.'' *Mohn v. Mohn,* above cited, was referred to with approval.

The logic of this last rule which we have stated is this: Although there may be no inconsistency between the provi-

sions of the will made for the widow and her right to a distributive share from which an implication may be found that the devise was to be in lieu of dower, such fact may be found from the circumstance that to allow the widow to take both would destroy some of the other specific provisions of the will made for the benefit of others. This is based upon the thought that testator intended his will to be carried out as he wrote it, and that if thereunder the widow by taking the devise to her and also her distributive share would defeat some specific provision of the will, and thus thwart him in his attempt to dispose of his property by will, it must be inferred that he intended the provision for the widow to be in lieu of dower. Although this thought is perhaps overlooked in some cases, and not made prominent in others, it seems to us that it is fundamentally sound and should be applied to the case now before us. Surely, if one makes a specific devise of lands even in remainder to a given person, and at the same time a life estate in that and other lands to his widow, he does not intend that she shall have both a life estate in these lands specifically devised and also an absolute title in fee to one-third thereof. The taking of the one-third in fee absolutely destroys his intent, and to our minds calls for an election on the part of the widow. As intimated in some of the cases, it is, after all, a question of the intent of the testator, and cases are, as a rule, of little help, save as they announce general principles.

Appellant concedes that, if present power of sale is given by the will, this is inconsistent with the widow's right to one-third in fee, and confesses the rule announced in *Mohn v. Mohn, Cain v. Cain, Snyder v. Miller,* and other like cases, but says there was no power of sale given in the will now before us. We are agreed with his construction of the instrument. It does not give power of sale. In fact, sale is inhibited. But it is provided that if his word is unheeded or if, for any reason, sale is made, that the proceeds shall be divided as stated. Moreover, in order to give the clause consistency in itself and with other portions of the will, the clause may be

construed in this way: "that when sold," instead of "and if sold," etc.

The controlling features in the case, as we see them, are that, after giving his wife all his personal estate for life, he also gives her all his real estate for life, describing it. He gives his grandson John Pels the one hundred and nine acres of land heretofore described specifically, not in remainder, but presently, although there is, as will be noticed, a precatory clause as to the use of his land by the grandson after the testator's death. Provision is also made for the division of this land, should he die unmarried, to the testator's children, naming them, or to their survivors. To allow the widow to take one-third of this specific property in addition to a life estate would be to destroy this specific devise and to thwart the objects and purposes of the testator.

Taking the will by its four corners, we are constrained to hold that the testator very clearly intended that the provisions of the will in favor of his wife should be in lieu of her distributive share, and that to allow her to have both would thwart his manifest purpose and intent, and that there is such an inconsistency between her right to take her distributive share under the law, and the other provisions of the will both for her and for the other devisees, that an election on her part was required.

As stated in some of the cases cited, there is a conflict in our previous cases, and, if there be any way of harmonizing them, it is upon the theory above announced. Not all, perhaps, can be so harmonized; but the rule we finally adopt is the one suggested by our later cases, and, whether the rationale of the rule has been properly stated or not, these later cases are in line with our conclusions here announced.

The judgment seems to be right, and on each appeal it must be, and it is, *Affirmed.*    All the Judges concur.