HENRY STEVENS, Guardian, Appellee, v. JOHN PELS et al., Appellants.

**JUDGMENT:** Conclusiveness—Election for Incompetent Surviving
1 Spouse. One who applies for and secures from the court an order to the effect that an incompetent surviving spouse shall take a distributive share, instead of a life estate under the will, may not thereafter question the legality or correctness of such election. (Sec. 3376, Code Supp., 1913.)

**WILLS:** Distributive Share (?) or Life Estate (?)—Election Relating
2 Back. An election by the court for an incompetent surviving spouse establishes the status of the widow in relation to her husband's estate from the date of the testator's death. (Sec. 3376, Code Supp., 1913.)

**DESCENT AND DISTRIBUTION:** Undivided Distributive Share—Li-
3 ability of Cotenant for Rent. An heir who, with the surviving spouse, is rightfully in possession of property in which the spouse has an undivided, distributive share, is not liable to the spouse for rent, *until such share is set off to the spouse.*

**TENANCY IN COMMON:** Liability of Cotenant for Rent. A tenant
4 in common, in possession of the undivided property, who in no wise

denies the right of his cotenant to also take possession, is not liable for rent to the tenant out of possession. (See 37 G. A., Ch. 27, for new statute.)

**DESCENT AND DISTRIBUTION: Distributive Share—When Defeated by Conversion.** An heir may not defeat the widow's application to have her distributive share set aside, by showing that the widow has converted to her own use moneys and credits of the estate in excess of the value of her said share, unless he shows that he had an interest in such moneys and credits.

**PAYMENT: Voluntary Payments—Recovery.** A tenant in common, in possession, who voluntarily pays rent to his cotenant, also in possession, may not recover such payments on the naked plea that *he did not understand his rights.*

**DESCENT AND DISTRIBUTION: Distributive Share—Collection of Rents—Accounting.** A widow who for many years collects the rents for the devised property, manifestly with the understanding on the part of herself and all the heirs that she was a life tenant of such property, and then has her relation to the property *changed to that of an owner of an undivided distributive share,* will be held to have sustained the latter relation to the property from the death of testator, and, in the setting off of the distributive share, must account to the heirs *for such rents.*

**LIMITATION OF ACTIONS: Tolling Statute by Inconsistent Conduct.** A widow who has, for 17 years, collected rents for devised property on the assumption that she was entitled thereto under a life estate therein, but who, thereafter, on her own application, was adjudged to have taken an undivided distributive share in the property, will not be permitted, in an action to set aside such share, to interpose these 17 years as a bar to the demand of the heirs that she account to them for the rents collected.

**TENANCY IN COMMON: Tenancy Implied, in Order to Avoid Statute of Limitation.** Where a widow, for more than 10 years, continues with the heirs in a joint occupancy of lands, without any application to set apart her distributive share, equity will imply a mutual agreement between her and the heirs for a tenancy in common, against which no statute of limitation runs.

**PARTITION: Allowable Counterclaim—Accounting in Probate.** In partition for the setting aside of the distributive share of a surviving wife, who was executrix of the estate, the heir may interpose a demand for a general accounting as to all estate matters, including an accounting for rents collected for lands *in which the wife had no distributive share.* (Sec. 4240, Code, 1897.)

**DESCENT AND DISTRIBUTION**: Distributive Share—Failure to Account. The surviving wife's claim to a distributive share may not be defeated by the naked plea that she has not made an accounting as executrix.

**PARTITION**: Distributive Share—Establishment of Liens. An heir, in an action by the surviving widow to have her distributive share set off, may, under a general prayer for equitable relief, have judgment for his interest in rents collected by the widow as executrix, and may have such interest made a lien on such distributive share.

**WILLS**: Distributive Share—Accounting for Rents. A surviving widow who has acted as executrix of the estate will be charged, in an action by her to set off her distributive share, not with the amount of the rental value of the real estate, but with the amount actually collected by her, less taxes and maintenance charges imposed on her by the will.

**PARTITION**: Distributive Share—Lien for Improvements. Where the cost of improvements made by the heir was made a charge solely against the widow's distributive share, *held* that it should be made against the common property.

**INTEREST**: When Nonchargeable on Trust Funds. Interest, prior to suit brought, will not be exacted on rents collected by a surviving widow, which became a trust fund in her hands, (1) when the collections were made with the full acquiescence of the heir, (2) when the widow never trafficked therein, and (3) when the heir never made demand therefor, until the final accounting.

**DESCENT AND DISTRIBUTION**: Distributive Share Including Buildings. A widow's distributive share will not *necessarily* be so set off as to include the building, when the record reveals the fact that she had allowed her strict statutory right to expire by lapse of time, and was simply a tenant in common with the other heirs, and especially when the widow dies, pending suit, and her heirs are substituted as plaintiffs.

*Appeal from Carroll District Court.*—M. E. HUTCHISON, Judge.

DECEMBER 15, 1919.

REHEARING DENIED MARCH 17, 1921.

SUIT to set aside plaintiff's distributive share in certain land as surviving widow, or to award her one third of said land by partition. Recovery for rent was also prayed as against the

defendant, her cotenant, and owner of two thirds of such land. There was a decree for the plaintiff substantially as prayed. The defendant appeals.—*Modified, affirmed, and remanded.*

*Salinger, Reynolds & Meyers,* for appellants.

*Chas. C. Helmer* and *Lee & Robb,* for appellee.

EVANS, J.—The parties hereto are the same as in *In re Estate of Stevens,* 163 Iowa 364, and *Pels v. Stevens,* 187 Iowa 443. The subject-matter of the former suits and of this one pertains to the property of the estate of Gerhard Johan Stevens, who died testate, August 1, 1894, leaving Anna Mary Stevens as his widow surviving, and his sons, Henry and Herman, and his daughter, Mary Korwes, and his grandson, John Pels, only child of a deceased daughter, as his four and only heirs at law and residuary legatees of his will. The estate consisted in the main of two farms and a substantial sum in moneys and credits. One farm of 109 acres was occupied as a home. The other farm of 240 acres was occupied by tenants. The mother of Pels having died in his infancy, he was reared in the home of his grandparents, and was a member of the family at the time of his grandfather's death, being then 15 years of age.

The will of the testator gave to the widow for life all the real estate and all the personal property, including moneys and credits. Subject to her life estate, it gave to Pels the home farm of 109 acres. No disposition was made in terms of the 240-acre farm, other than giving a life estate therein to the widow. Certain money bequests were given to the surviving children, to be referred to later. The widow was named executrix, without bond. Direction was made therein that the son Henry aid his mother in the management of the estate. The widow was not versed in the English language. She spoke and read German exclusively. She took and continued to hold possession of the moneys and credits, and collected the rents of the 240-acre farm every year until she came under disability, in 1911. During this period of time, she continued to live with Pels upon the home place. The relations between her and her children and her grandson were at all times harmonious and cordial. Partly

as a result of this fact, no report was ever filed by her in the probate court, and none was ever demanded by any of the heirs. These apparently harmonious relations continued up to the time of her disability. In 1911, she became sick, and mentally incompetent to transact business. Thereupon, by mutual conference of all the heirs, she was taken to the home of her daughter, Mary, who undertook to care for her. This was her farewell to the home. It also proved to be the end of the family harmony. She died, pending this suit, and before the trial thereof, in the year 1917, at 98 years of age.

Though the widow had for many years acted under the will, either in her own right or as executrix or both, she had never filed a formal election to take under the will. When disability came upon her, she was incompetent to elect. Thereupon, Pels brought an action in court, wherein he alleged her incompetency, and alleged that it was to her interest to take under the will, and asked that the court make an election for her. The court found that she was incompetent; found also that it was to her interest to take under the statute; and declared her election accordingly. In that action, the widow, through her guardian, Henry Stevens, took the ground that she was not required to elect, because, under the law in force prior to 1897, and at the time of the death of the testator, the widow was entitled to take under the will in addition to her distributive share, unless the terms of the will indicated otherwise. This contention in her behalf was denied by the court. It was held therein that she could take only under one right, to the exclusion of the other. On cross-appeals to this court, the holding below was affirmed by us. *In re Estate of Stevens,* 163 Iowa 364.

On the trial of the foregoing case in the court below, Pels discovered, for the first time as he alleged, that, in January, 1902, on the first day of his majority, he had unwittingly signed a deed to his two uncles and aunt of all of his interest in the 240-acre farm, without any consideration or preceding agreement therefor. He thereupon began an action to set aside that deed. This relief was granted to him by us on appeal to this court. *Pels v. Stevens,* 187 Iowa 443.

On the same occasion, the widow conveyed to her children her interest in said 240-acre farm, in consideration of receiving

back from them a life lease thereof. This was the state of the title of the 240-acre farm, at the time of the death of the widow. In 1915, the widow, through her guardian, brought the present action to set aside her distributive share in the 109-acre farm, and to recover of the defendant for the value of rents for the use of the same. Later, she amended her petition, and asked that she be adjudged to be a tenant in common with the defendant, and the owner of the undivided one third of said farm, and that the same be partitioned, either in kind or by sale and division of proceeds. Before trial, her heirs were substituted as parties plaintiff. Decree was entered in their behalf, adjudging that they were the owners of the undivided one third of the farm, and adjudging also that they were entitled to have one third in value of such farm set off so as to include the homestead. Referees were appointed to so set off one third in value. This is the decree from which this appeal is taken.

In his answer to the petition, the defendant pleaded estoppel. He averred that the widow had appropriated $15,000 of moneys and credits of the estate, and had never in any manner accounted therefor; and that she had thereby received her full one-third share of the estate in the form of personal property; and that she was estopped thereby from claiming a distributive share in the real estate.

By a second division, the defendant pleaded estoppel also upon allegations that she appropriated rents and profits of the real estate to an extent greater in value than her fee interest, and that she had never accounted therefor. It was prayed, therefore, that she be estopped from claiming her distributive share, at least until she had accounted for such rents.

The real controversy of the case is concentrated upon the pleas in estoppel. The response of the plaintiff thereto is threefold: (1) The statute of limitations; (2) that the plaintiff has the remedy of accounting in probate court; (3) that a general accounting as to all estate matters and as to the rentals of other lands is not germane to the proposed partition of this particular farm, and may not properly be joined therewith.

I. Though the foregoing are all the estoppels pleaded, the argument for appellant bristles with reasons why the widow should be estopped to elect to take a distributive share, because

1. Judgment: con-
clusiveness: elec-
tion for incom-
petent surviving
spouse.

she had been in possession of the estate as an assumed life tenant for more than 20 years, and had, therefore, made a practical election to take under the will. If the question were open and untrammeled by the previous litigation, the argument would be persuasive. But the defendant instituted the proceedings which resulted in a declaration of election for the widow by the court. Appellant concedes that this litigation adjudicated something. As to the scope of such adjudication, the concession is timid. We incline to the view that the mere election by the court for a *non compos mentis* has the same force and effect as a formal election duly filed by a person *compos mentis,* and no more. As a mere adjudication, therefore, this order of the court was quite limited in scope and extent. Pels did not, in that case, plead or prove that the widow had by her conduct elected to take under the will, or had estopped herself to elect to take a distributive share. He could have pleaded such facts then. What he did plead was that the widow *had not* elected, and that she was now incompetent to elect. He asked the court to elect for her. True, he asked the court to make an election for her to take under the will; but this request was based upon the hypothesis that it was to her interest to so take. It was not based upon any claim that she was bound by her past conduct to so take. Upon such pleading, the trial court found that it was to her interest to take under the statute, and declared the election accordingly. If the widow could be defeated in this proceeding by showing an estoppel by her conduct as an assumed life tenant of the estate, the same facts would have stood in the way of her election in 1911 to take a distributive share. To go into court and ask that the court make an election for the *non compos,* and afterwards to assail such election in subsequent litigation on the grounds here indicated, would be to play fast and loose with judicial proceedings. We reach the conclusion that the proceedings of 1911, instituted by Pels, and the order of the court pursuant thereto, operate as an estoppel by judgment against any subsequent claim that such election was invalid or erroneous.

In the further discussion, therefore, of the questions presented herein for our consideration, we shall treat the election made in 1911 as relating back to the beginning, and as estab-

lishing the status of the widow in her relation
to her husband's estate.   It should be noted
here, also, that the claim made on behalf of the
widow in resistance to a demand for an election

2. WILLS: distrib-
utive share (?)
or life estate
(?): election re-
lating back.

in 1911 was that she was entitled to take both under the will and
under the statute.   It is to be noted also that, though the decision
on that question was adverse to the widow, yet, on appeal to this
court, we found the question a close one.  *In re Estate of Stevens,*
163 Iowa 364.   The good faith of the widow, therefore, in assum-
ing to claim in both capacities, must be accepted; and this fact
has its bearing upon her character as a trustee.

II.   In awarding decree to the plaintiff, the trial court
allowed recovery for one third the rental value of the premises
for five years next preceding, allowing to the defendant a credit
for the cost of improvements made.   This seems
to have been allowed on the theory of *quantum
meruit* and implied agreement.   The plaintiff
must be regarded either as asking for her dis-

3. DESCENT AND
DISTRIBUTION:
undivided dis-
tributive share:
liability of co-
tenant for rent.

tributive share to be set apart in kind, or as one who has be-
come the owner of an undivided one third of the farm and co-
tenant with Pels, asking partition.   If the former, the heir or
devisee was not liable to her for rent until her share was set
apart.   If the latter, then, as owners in common, each cotenant
had a right to occupy the entire premises, and to
occupy it in common and jointly with his co-
tenant.   If a cotenant occupy the common prop-

4. TENANCY IN
COMMON: liabil-
ity of cotenant
for rent.

erty alone, he is within his rights.   No implied agreement arises
that he will compensate the nonoccupying cotenant.   He may
agree to make compensation, and be, therefore, bound by his
agreement.   But if he declines to so agree, he cannot for such
reason be dispossessed.   Nor will the law imply an agreement
where express agreement is refused.   In this case, the two co-
tenants, grandmother and grandson, did occupy the common
property together affectionately for more than 17 years.   For a
period of four years of that time, perhaps under a misconcep-
tion of his rights, Pels agreed to pay rent to his grandmother,
at the rate of $300 a year.   Having agreed to pay it, he was
bound to pay it and did pay it.   Later, he stood upon his rights,
and declined to pay or to agree to pay.   In support of this rent

provision of the decree, the appellee cites authorities to this proposition:

"Where one cotenant holds possession of real estate and denies the right of his cotenant therein, he becomes liable for rent to his cotenant thus excluded."

The gist of this proposition is that there must be a denial of the right of his cotenant in the property, in order to entitle such cotenant to recover rental value from the tenant in possession. Such denial would be an ouster. This legal proposition is quite beside the mark herein. Pels did not deny the right of possession of his cotenant. He simply denied his liability to her for rent. They were both in possession of the common property. Each used it in a manner suitable to his own circumstances and physical condition, and such use by each was consistent with the use by the other. There was no ouster. Nor was there any ouster in 1911, when the grandmother was taken to the home of her daughter for care. She was thus removed for her own benefit and comfort. Her right to remain or to return was in no manner challenged.

Upon this state of facts, there was no basis for any implied agreement by the cotenant in actual possession to pay rental to the absent cotenant. In such a case, only an express agreement, or the collection of benefits or rents by the one cotenant, renders him liable to the other. In this respect, the decree as entered was erroneous. By way of precaution, it may be noted here that recent legislation has, by Chapter 27, Acts of the Thirty-seventh General Assembly, changed for the future the rule here stated.

III. We come to the first plea in estoppel. As already indicated, this is based upon allegations that the widow took possession of all the moneys and credits, and has never accounted

5. DESCENT AND DISTRIBUTION: distributive share: when defeated by conversion. for the same, and that the amounts thus received amount in value to more than one third of the testator's estate. Whether by this plea the pleader seeks to abate the action until an accounting be had, or whether he asks that the failure to account shall be deemed a permanent and conclusive estoppel against the taking of the distributive share in the real estate, is not clear. In this respect, the plea looks in both directions. It is put forward, also, that the widow has no estate out of which

any sum due Pels could be paid, except her alleged one-third interest in this farm. It is true that she has no right to a distributive share in the 240-acre farm, because she exchanged that with her children for a life estate in the whole. If we should find it true, upon this record, that the widow had possession of moneys and credits unaccounted for, a share of which did belong to this defendant, we incline to the view that the arm of equity is not too short to afford a remedy. Nor do we think that the right of the widow to a partition is so peremptory and absolute that conditions of equity precedent may not be imposed upon its exercise. The evidence shows that the testator left moneys and credits to an amount between $5,000 and $6,000. These came into the possession of the widow, both as executrix and as supposed life tenant. The defendant alleged that the sum which came into her hands was more than $15,000. He takes the position in argument that the burden of disproof was on the widow. On this branch of the case, we think that the provisions of the will quite eliminated any interest of the defendant in these moneys and credits. Paragraphs 7, 8, and 9 of the will were as follows:

"7. I give and bequeath to my son, Herman Stevens, the sum of one thousand dollars; to my son, Henry Stevens, the sum of one thousand dollars and to my daughter, Mary Korwes, the sum of one thousand dollars, which said several legacies or sum of money I direct and order to be paid to the said respective legatees within six months after the decease of my wife, Mary Stevens.

"8. I give and devise after the death of my said wife, all the rest, residue and remainder of my moneys or notes to my son, Herman Stevens, to my son Henry Stevens, and to my daughter, Mary Korwes, to be equally divided between them, share and share alike, provided it shall so much money be taken to pay the guardian, Henry Stevens (or whosoever it may be) all the expenses for the education of John Pels, my grandson. .

"9. After each of my three children, viz.: Herman Stevens, Henry Stevens and Mary Korwes has received two thousand dollars in full of all legacies to them, under this will, the rest of the money (if there is any more on hand) has to be divided in equal shares to my sons, Herman, Henry and to my daughter,

Mary and my grandson, John Pels, and if any of them is deceased, the children of the deceased shall be entitled to such share.''

It will be seen by Paragraph 8 that the three children of the testator were made the residuary legatees of moneys and credits. Paragraph 9 is somewhat uncertain in its meaning, but might possibly be read as a qualification of Paragraph 8. Taking the three paragraphs together, Paragraph 7 indicates that the three children were to receive $1,000 each, regardless of the source from which payment should be made; Paragraph 8 seems to assume that there would be sufficient moneys and credits to pay the legatees of Paragraph 7 and a residue, such residue being given to the same three children. Paragraph 9 might possibly be construed as a limitation upon Paragraph 8, limiting its benefits to a maximum of $2,000 to each legatee. The significance of these paragraphs of the will, as so construed, is twofold, for our present purpose.

1. It indicates an estimate by the testator of the approximate amount of his moneys and credits as being $6,000. The will was executed only one year prior to his decease. If the moneys and credits had been $6,000, or greatly less, Paragraph 8 would have carried them all, and Paragraph 9 would have been unnecessary. If such moneys and credits had been substantially greater than $6,000, there would have been no occasion or likelihood for Paragraph 8 at all.

2. The further significance is that, in view of the election of the widow to take a distributive share, the defendant Pels could have no interest in the moneys and credits, except in an excess over $9,000. That is to say, if there had been $9,000 of moneys and credits, the widow would take one third, and the remaining $6,000 would be absorbed by the provision of Paragraph 8. Therefore, though the record before us does not disclose the exact amount of moneys and credits which came into the hands of the widow, we are satisfied, from all the evidence, that it would be an idle form to order an accounting on that question, with any expectation that an excess of $9,000 could be shown or properly implied, as having come into the hands of the widow.

In the foregoing hypothesis, we have assumed a construc-

tion of the will most favorable to Pels. We may as well add
that such construction is probably more favorable to·him than
the terms of the will will fairly bear. Paragraph 8 is definite
and unconditional, and carries the residue of moneys and credits
to the three children. A residue of the proceeds of the personal
estate, outside of moneys and credits, might still be possible.
Paragraph 9, therefore, can be construed ·as referring to such
residue of the proceeds of the personal estate. Paragraph 10
bequeaths to the four heirs, in equal parts, the proceeds of the
·real estate not devised. Under this construction of the will,
therefore, the children would take all the moneys and credits.
The will presents difficulties of construction. It is both inept
and inapt in its language, and bears evidence of having been
drawn by someone other than a capable lawyer. The belief of·
the family that the inequalities of the· will were the result of
the mistakes of the scrivener, underlies this family controversy.
It is said to have been drawn by Gus B—. We know Gus, though
not this particular one of him. He has been writing wills in
this state for many years, and has almost foiled every rule of
construction which this court has been able to find or to formu-
late. He has been the efficient cause of much, if not most, of
the testamentary litigation presented to us.

But from any point of view, upon any permissible con-
struction, Pels has no interest in the moneys and credits left
by the testator. As to this plea of estoppel, therefore, its foun-
dation fails.

IV. It remains to consider the question of the collection
of rents. As to the rents paid for three or four years by Pels to
the grandmother, we are unable to see any legal reason why
recovery should be allowed. Pels agreed to pay
rent, and he did pay it. It is said that he paid,
not knowing his rights. It was time that he
learned them. In his action to set aside the deed (187 Iowa
443), we sustained his plea of trust, and of want of knowledge
and acumen in that case. His signing was done on the first
day of his majority, before he had had time to rub his eyes and
to open them to his new responsibility, and while the duress
of his minority was still an influence upon him. But we would
not thereby establish a continuing status for him, which he

6. PAYMENT: vol-
untary payments:
recovery.

can plead or use in evidence in all subsequent transactions. He became of age in 1902. He was married in 1903. He is presumed to have come into mature manhood. He was better equipped to ascertain his rights than his grandmother was. While his education was limited, it was better than hers, and even better than that of his uncles. We cannot continue to look upon him as unsophisticated and ignorant. So far, therefore, as the payments actually made by him are concerned, they were voluntary, and no right of recall remains to him.

V. As to the rents received by the widow from the 240-acre farm, a different situation is presented.

Ignoring, for the moment, the widow's conveyance in 1902

7. DESCENT AND DISTRIBUTION: distributive share: collection of rents: accounting.

of her distributive share to her children, her legal relation to the estate, and to the farm as a part of the estate, was, from the beginning, just what her subsequent election made it: that is to say, she had a right to her distributive share. Her right to a distributive share in this farm could, by implied agreement, be converted into a tenancy in common with the heirs. As such tenant in common, she could lawfully receive all the rent, and become thereby liable to the heirs for two thirds thereof. Again, as executrix of the estate, she could, at least with the acquiescence of the heirs, receive all the rent and hold it, subject to an accounting as such executrix. Still again, as a life tenant, as she mistakenly supposed herself to be, and as the heirs mistakenly supposed her to be, she could have collected the rent, and become thereby liable therefor as a trustee. It is quite clear, from the evidence in this record, that she collected these rents, believing herself to be a life tenant. The question of her life tenancy under the will was adjudicated against her in the same suit wherein an election was entered for her to take under the statute. (163 Iowa 364.) Having rightfully come into possession of the funds, and having held them with the full knowledge and acquiescence of the beneficiaries, and without demand by such beneficiaries, equity will deem her a trustee, holding the funds for the benefit of herself and the heirs. However, as to all the heirs other than Pels, her liability is to be determined under the instruments executed in 1902, whereby she conveyed to her children her fee-title interest, and received from them a

life lease, and whereby also she executed her will, bequeathing to them her estate. As to them and their representatives, therefore, she was under no liability or duty of accounting. This arrangement with her children, however, could not exempt her from liability to Pels for his share of the rents collected by her. In view of the restoration to Pels by adjudication of his original interest in the 240-acre farm, he must be regarded as holding such interest from the beginning. He was the owner, therefore, of the undivided·one fourth of two thirds of such farm, and was entitled to that moiety of the rents collected therefrom. In other words, as to her children, the widow was a life tenant of such farm, and was entitled to collect the rents as such. As to Pels, she was a cotenant, and entitled to collect the rents, as such, for the joint benefit of herself and of him. It follows that the rents thus collected by her must be deemed the property in common of herself and Pels.

VI. This brings us to the question whether the statute of limitations operates as a bar against any remedy to Pels.

1. We find at least two sufficient reasons why the statute is not a bar. As between her and Pels, it may be deemed that the widow collected these rents under the assumption and belief on her part that she was a life tenant, under the will of her husband. When it was adjudged that she could not take both under the will and under the statute, she elected to take under the statute. This amounted to her renunciation of the provisions of the will in her behalf. The renunciation of such provision was a disclaimer of all benefits thereunder. It was, in equity, the equivalent of a promise to turn over to the proper persons all moneys received by her under the will. It is to be presumed that the court would not have permitted her election to take a distributive share to be made, if she maintained the attitude of clinging to the benefits of the will already had. The renunciation must, therefore, be deemed in equity the equivalent of a promise to hold the benefits in her hands as a trustee, and to account therefor to the proper beneficiaries. Having relinquished her claim of title to the benefits thus received, as a basis for her election to take her distributive share, she transformed these benefits into a trust fund in her hands, and voluntarily assumed

8. LIMITATION OF ACTIONS: tolling statute by inconsistent conduct.

thereafter the relation of trustee thereto. Such renunciation for the purpose of election necessarily lifted the bar of the statute of limitations. Renunciation of the benefits would be a mere falsehood, if the benefits might still be retained, under the bar of the statute. Equity would not recognize it. By the election in 1911, she opened the whole question of the nature and extent of her interest in the testator's estate. The adjudication then had, fixed her property rights for the first time. Though that adjudication related back, the statute of limitations, once lifted, could not go back. Though it were deemed to start from the date of such adjudication, it could run only forward.

2. There is a further reason. Equity is reciprocal. The widow came into a court of equity for the partition of her share. Her statutory right to have her distributive share set apart had been long barred by such statute. But where a widow continues with the heirs in a joint occupancy of lands, without any application to set apart her distributive share within the statutory period of 10 years, equity will imply in her behalf a mutual agreement between her and the heirs for a tenancy in common, against which no statute of limitations runs. It is by virtue of this equitable implication that the widow has a standing herein at all. The same principle and power of equity which protects her may impose upon her equitable conditions as precedent to equitable relief in her favor. In the imposition of such conditions upon a complainant, the statute of limitations is not necessarily a bar thereto. This rule of equity has an analogy in statutes which lift the bar of limitations from a counterclaim, so as to permit it to be interposed as a defense to the claim of the plaintiff, though it be barred as an independent action against him. To put it in still another way, plaintiff and Pels were tenants in common of the 240-acre farm. When she collected the rent, it was rightfully in her possession as the common property of the cotenants, and equity may so treat it as a continuing trust. We reach the conclusion herein that the running of the statute cannot be deemed to have started prior to the adjudication of 1911.

*9. TENANCY IN COMMON: tenancy implied in order to avoid statute of limitation.*

VII. Having thus found that Pels is entitled to a share of the rents in the hands of the widow, free from the bar of the

statute, is there any remedy available to him *in this proceeding?*

10. PARTITION: allowable counterclaim: accounting in probate. The appellee contends that the claim for accounting for rents of the 240-acre farm is not germane to this partition proceeding, which involves the 109-acre farm; and that, by reason of the provisions of Section 4240 of the Code, such claim may not be joined therewith. Section 4240 is as follows:

"Section 4240. The action for partition shall be by equitable proceedings, and no joinder or counterclaim of any other kind shall be allowed therein, except to perfect or quiet title, to declare and enforce liens between the parties to the action, and except as provided by this chapter."

This section provides for partition by equitable proceedings, and impliedly admits counterclaims of a "like kind." It also permits the declaration and enforcement of liens, as between the parties to the action. If Pels had a judgment against the widow for the amount due him, he would have a judgment lien upon her interest in this property. A court of equity has power to order judgment for the amount justly due, and thereby make the same a lien. Without this formality of order, it has a like power to declare a lien, if the equities of the case require, and to incorporate such finding as a part of the decree. We are clear that equitable remedy is available to Pels in this proceeding.

In *Barrell v. Barrell,* 25 N. J. Eq. 173, 176, a similar question was involved. The following, from the opinion in that case, is quite applicable here:

"Charles and Mary protest against a partition, unless it be made on such terms as, at least, to secure to them the benefit of the charges which the will directs to be made against George and Henry, in respect to the land specifically devised to them. The complainant insists that the considerations presented by the answer cannot properly influence or affect the action of this court, seeing that no question is made as to the legal title of the complainant to the share which he claims to own in the real estate of which he seeks partition. But when partition is sought in this court, it will only be accorded on equitable terms, when it seems to the court just that such terms should be imposed. *Doughaday v. Crowell,* 3 Stockt. [N. J. Eq.] 201; *Haines v. Haines,* 4 Md. Ch. R. 133. The court cannot be successfully

called upon to work injustice. The fact that the complainant might obtain partition at law, or that he. is entirely at liberty to sell his undivided interest in the real estate in question, will not induce this court to grant him the unqualified partition he seeks, if it appear that it would be unjust to do so. He has come into this court for equity; he must, therefore, do equity. That he and his brother Henry have possession of a large amount of their father's personal estate, and between them have held it ever since their father's death, is not denied. Nor is it denied that they have not paid to their brother and sister their shares of it, although they have frequently been requested to make such payment. That George and Henry have not paid to their brother and sister their proportions of the money with which they were to be charged in the division of the estate, in respect of the lands specifically devised to them, is proved, and, indeed, is not denied, and it is proved that the complainant has refused to pay anything on account of the $8,000 with which he is to be charged. No reason whatever is given, nor is any excuse offered, although all the parties were sworn as witnesses, for thus withholding from Charles and Mary their shares of their father's estate. The sums to be charged in respect of the real estate are not charged upon the lands. Charles and Mary have no security for either their shares of that money, or of the personal estate, beyond the personal responsibility of George and Henry. The complainant is before this court, asking for a division of part of the estate. It is but just that he and his brother Henry should be required, in the division to be made here, to account to their brother and sister for their shares of the amounts charged in respect of the specific devises of real property to them.''

A similar holding was made in *Campbell v. Campbell*, (Tex. Civ. App.) ˋ145 S. W. 638.

Pomeroy states the rule briefly as follows:

''There is hardly any question arising out of the relation of the parties to the common property which a court of equity may not determine incidentally in a suit for partition, for the purpose of doing complete justice and preventing multiplicity of litigation. A bill for partition may include a prayer for an accounting against the defendants, and the defendants may by

cross-bill have an accounting against the complainant.'' 2 Pomeroy on Equitable Remedies, Section 720.

We do not think it is available to Pels to plead the failure of accounting as a *bar* to any remedy to the plaintiff. He cannot lump his interest in the rents against the distributive share of the widow, and say to her, ''You keep the rents, and I'll keep the land.'' This, in substance, is one of his contentions. Under his general prayer for equitable relief, we think he is entitled to an adjudication of the amount due him, and to the establishment of a lien therefor upon the interest of the plaintiff in the real estate. This is elementary equity. The widow is dead. She leaves no other estate than is herein involved. Her representatives, who have been substituted as parties herein, are the sole legatees of her will. If the rents have been mingled with the moneys of the widow, the mixture will come into the hands of the legatees. The decree should, therefore, burden the property with the payment of these trust funds. This would have been equitable as against the original plaintiff, if she had lived, and is no less equitable against the substituted plaintiffs.

11. DESCENT AND DISTRIBUTION: distributive share: failure to account.

12. PARTITION: distributive share: establishment of liens.

VIII. The liability of the widow for rents is based upon the amount she received, and not merely upon the rental value of the premises. The evidence on the question is somewhat meager, but sufficient for an estimate of the approximate amount. The plaintiff's witness Henry Stevens was interrogated thereon by the defendant in cross-examination. At the time of the death of the testator, the farm was rented at $2.50 per acre. In 1900, the rent went to $3.00; in 1910, it went to $3.50; in 1914, it went to $4.00 per acre; and in 1915, to $4.25. This testimony appears to have been accepted by both sides, without further dispute in the record. It will, therefore, be found therefrom that the widow collected the rentals on the 240-acre farm at the rate of $2.50 per acre, from the year 1895 to 1899, inclusive; at the rate of $3.00 per acre from 1900 to 1909, inclusive; at the rate of $3.50 per acre from the year 1910 to 1913, inclusive; at the rate of $4.00 per acre for 1914; at the rate of $4.25 for

13. WILLS: distributive share: accounting for rents.

the year 1915. The foregoing will furnish the basis of computation. As against this, the plaintiff should be allowed to offset taxes and all proper expenses of maintenance. The will enjoined upon her as executrix the duty of maintaining the improvements. The record before us does not enable us to determine what amount was paid out for taxes or maintenance. Pels will be awarded one sixth of the net amount of rents thus collected, less the expenditures for taxes and maintenance. The amount thus found due to Pels will be established as a lien upon the real property of the widow.

The decree below allowed a credit to Pels of $430, as cost of improvements made by him upon the place, under some arrangement with the widow. The cost of improvements thus **14. Partition: distributive share: lien for improvements.** found was charged *in toto* against the widow, and offset against the rents found to be due to her from Pels. The amount of this expenditure should be allowed to Pels, but should be made a charge upon the common property, and not upon the share of the widow alone.

IX. The question of interest naturally arises at this point. We reach the conclusion that the ground upon which we deny the widow the protection of the statute of limitations requires **15. Interest: when nonchargeable on trust funds.** us to hold, also, that she is liable for the corpus of the rents collected, and not for interest thereon. Treating it further as a trust fund, as we have, neither the statute of limitations will run against it nor interest accrue upon it until she has in some manner repudiated the trust, by refusal of demand or otherwise. The trustee and the *cestui que trust* lived together affectionately, as members of the same family, in the same home. For aught that appears, they lived out of the same fund, and shared each other's expenditures, and so continued up to the time of the widow's disability in 1911. There is fair reason for saying that, within a reasonable time after his majority, he knew as much about her business as she did. Although there was no very clear idea in the mind of either of them as to the exact extent of their legal rights, these rights were, nevertheless, ascertainable. They were more readily ascertainable by Pels than by his grandmother, because of his English education and her lack of it. He

knew what she was doing in the matter of collecting the rents. He made no objection thereto and no demand therefor. Her continued possession thereof was always acquiesced in by him. She appears to have had in her hands, at the time of her disability, about $4,400. This amount was presumably the accumulation of rents. She had not trafficked with it or taken any benefit therefrom, except to maintain its custody. Therefore, no recovery of interest will be allowed. The cause will be remanded to the district court, with leave to the plaintiffs to show the extent of the proper expenditures as offsets to the rents collected. It is made to appear that the son Herman died before the bringing of this suit, the widow died pending the suit, and the son Henry has died pending this appeal. Direct evidence of the expenditures may thereby be rendered quite impossible, but it may be possible to obtain a fair approximation of the probable amounts thus expended.

A word of qualification ought here, perhaps, to be added. What we have herein said by way of denying interest to Pels on the amounts due him, and of denying rent to the widow against Pels for the use of the 109 acres, has no reference to the accrual of interest and rents after suit was begun. From that time they will accrue.

After suit begun, interest will accrue to Pels, pending litigation, upon the amount due at its beginning. It will also accrue on installments becoming due pending the litigation. On the other hand, Pels should be charged with one third of the fair rental value of the 109 acres from the time of suit begun, with interest on the successive installments from the time they became annually due, to the date of decree.

X. The decree below ordered the share of the widow to be set apart in kind, so as to include the homestead. This was the original right of the widow; but, since she allowed her strict statutory right to lapse by the expiration of 10 years, and came into court as a tenant in common, asking for partition, the court is not bound in such proceeding to set apart to her her share in kind, so as to include the buildings. Granted that the court may and will do so, if all the equities of the case require it, yet her rights as a tenant in common are no different from those of

16. DESCENT AND DISTRIBUTION: distributive share including buildings.

her cotenant. In view of the fact in this case that the widow had died before the decree, and that her surviving representatives have been substituted as plaintiffs, we are unable to see that any equitable consideration calls for this particular provision of the decree below. No evidence appears to have been taken on the question whether it was practicable to make partition in kind, as between the parties. We think, therefore, that this provision should be eliminated, without prejudice to the power of the trial court, if it be so advised after remand, to order a partition in kind or by sale, as the interests of the parties may demand. If partition in kind be ordered, then the referees should not be restricted to an inclusion of the buildings in the one share or the other. The decree entered below will be modified in the respect indicated herein, and otherwise affirmed. The right of the plaintiff to one third of the property will be confirmed, subject to a lien thereon for such amount due the defendant as, upon final computation, the court shall find and establish. The case will be remanded, with directions in harmony herewith.—*Modified, affirmed, and remanded.*

LADD, C. J., GAYNOR, PRESTON, and STEVENS, JJ., concur.